JOHN G. STOFFEL *et al.*, Respondents, *v.* GEORGE REINERS *et al.*, Appellants.

### October 17, 1876.

1. A party having acquired title through fraud on the part of his grantor, he being cognizant of the facts, cannot maintain his title in a court of equity.

2. Where it is sought to sustain a sale of property belonging to minor heirs, under proceedings set on foot, with a view of purchasing himself, by one who stands *in loco parentis*, and who, being guardian *ad litem*, employs counsel on both sides, and finally becomes the purchaser, the property must be shown to have brought something more than half its value.

3. A misdescription in the sheriff's advertisement of the property to be sold under a decree in partition vitiates the sale, and is a defect which cannot be cured except by new advertisement and sale.

4. It is not error to strike out matter in an answer which could have no influence in the decision of the cause.

5. Appellate courts have no power to render judgment on claims accruing since the rendition of the judgment below.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*William Kreiter*, for appellants, cited: 1 Edw. V.-C. R. 350, 383; 1 McCle. & Yo. 334.

*John P. Hudgens*, for respondents, cited: Hutchison *v.*

Cassidy, 46 Mo. 431; 38 Mo. 395; 47 Mo. 276, 356; Fugle v. Hobbs, 42 Mo. 541; 48 Mo. 243, 273; 42 Mo. 537; Wag. Stat. 1018, sec. 20, p. 1034, sec. 5; 32 Mo. 366; 34 Mo. 338; 36 Mo. 143; 50 Mo. 198; 55 Mo. 500; 58 Mo. 158, 458; 60 Mo. 172; Kerr on Fraud, 318–319, and note; 47 Mo. 304; 44 Mo. 560.

BAKEWELL, J., delivered the opinion of the court.

This is a proceeding in equity, commenced March 18, 1874, to set aside a decree in partition, and a deed made by the sheriff in pursuance of the decree.

It appears that Charles Frederick Lang died intestate, in St. Louis County, on July 17, 1856, leaving a widow, Mary J. Lang, and two minor children, plaintiff Josephine (now the wife of plaintiff John G. Stoffel) and Peter Lang. At the time of his death, Charles F. Lang owned lot 3 in block 3 of Yeatman and Holmes' addition to St. Louis, on which was erected a brick dwelling-house, the property in dispute in the present action.

The widow administered until her intermarriage, in 1857, with defendant Jacob Schmitz.

In October, 1868, Jacob Schmitz employed George Reiners to put up a house for him. The house was to cost $18,300, and to be erected on a lot owned by Schmitz. It was agreed between Schmitz and Reiners that Reiners was to be paid $2,000 cash when the cellar was finished; when the second-story brick-work was completed, Reiners was to receive in payment the house and lot 3 in block 3 in controversy in this suit; the remainder of the consideration for the building of the house was to be paid from time to time up to the completion of the house.

When the second-story brick-work was completed, Reiners began to press Schmitz to convey to him the house, and then first discovered, he says, that Schmitz did not own the house, but that it belonged to the heirs of the former husband of Schmitz's wife — that is, to Josephine and Peter

Lang, the step-children of Schmitz, living under his roof. These children were then both minors, Josephine having been born on September 18, 1851, and Peter being about two years younger. Reiners swears that, in June, 1869, Schmitz told him, in the presence of plaintiff Josephine, that he could not make him a deed to the house, as he had no title, but that he would have the property sold in partition as soon as Josephine was of age; that he would then bid in the property himself and make Reiners a deed. Josephine swears she heard nothing of this conversation. As soon as Josephine was of age, Schmitz employed an attorney to commence a partition suit for the partition of this property. In this suit, which was commenced on November 19, 1869, Josephine Lang was made plaintiff, and Jacob Schmitz and wife and Peter Lang, a minor, were defendants. Schmitz's attorney acted as counsel for plaintiff, and was paid by Schmitz; and Schmitz's attorney also employed counsel who acted for the defendants in this suit. Schmitz was appointed guardian *ad litem* of the minor defendants, and an attorney who was employed by Schmitz's attorney, and paid by Schmitz, filed an answer for all the defendants.

Josephine swears she never heard of the commencement of the suit, and knew nothing of it until after the property was sold in partition; but the attorney whose name is signed to the petition, and who was employed by Schmitz, swears that he explained the whole matter to her, and took her affidavit to the petition in his capacity as notary public. Her name is not written to the affidavit in her own handwriting, though she could write; but her name is written by her mother, and a mark appended. The attorney who took the affidavit swears that this was done because she was sick. The testimony is conflicting on this point.

Such proceedings were had in the partition suit that a decree was obtained, and an order of sale granted for a piece of property described in the following words:

" The premises in the petition described are as follows : Lot number three of block No. *four* of Yeatman & Holmes' addition to the city of St. Louis, according to the plot of said addition on file in the recorder's office of St. Louis County, and which said lot contains a front on the east side of Broadway, in said city, of twenty-seven feet, by a depth, eastwardly, of the same width, of one hundred and thirty-three feet, more or less, to a fifteen-foot alley, and bounded north by lot number two of said block, south by lot No. four, east by said Broadway." This description is erroneous in this, that the property is not in block 4, but in block 3, as described in the petition. By this description, however, it was advertised and sold by the sheriff, and struck off to Jacob Schmitz for $1,450, on May 30, 1870. It does not appear that he ever actually paid for the property more than the costs of sale, $106.35 ; nor did either of his step-children receive any of the proceeds of the sale. Before the execution of the sheriff's deed, on application of all the parties to the partition suit, by their attorneys, the sheriff was directed by the court to reform his deed by describing the property as in block *three;* and an entry was made in the Circuit Court declaring the decree amended by the substitution of the word " three " for " four " in the description of the block ; and the property was described in the sheriff's deed as set out in the petition. On June 15, 1870, Schmitz and wife conveyed to Reiners ; but in the description of the property in their deed the old mistake reappears, the block being called " four " instead of " three." Schmitz was applied to by Reiners to give a correct deed, but he refused to do so, and Reiners commenced proceedings against Schmitz to reform his deed, in which he obtained a decree against Schmitz, vesting in Reiners all the interest of Schmitz and wife in the property described in the petition in the partition suit as in block three. Reiners took possession of the property, which is worth about $20 a month to rent, and has had possession

ever since; and this suit is commenced by Josephine and her husband, and her minor brother, Peter, against Jacob Schmitz and Reiners (Mrs. Schmitz being dead), to set aside the decree of partition, the sale, and both the deeds, as fraudulent and void.

The preceding statement of facts has been made after careful perusal of all the testimony in the record. It may be proper to say that the only statement as to the age of Josephine is her own statement, in her examination in chief, that she was born September 18, 1857. This appears in figures (1857), and is a manifest error, as her father died July 17, 1856. Counsel for plaintiffs stated, on the argument, that this was a clerical error for 1851. It is probable that this is so.; otherwise, she would have been but twelve years old at the time the partition suit was commenced, and about fourteen at the date of her marriage, and not eighteen when her testimony was taken in the suit at bar. In the oral argument of this case, counsel for appellant insisted upon the manifest error as to the statement of her age as tending to discredit the witness. But she was not cross-examined on this point; and it is manifest that this is a clerical error in the record. She swears, in February, 1875, that her younger brother, Peter, is eighteen or nineteen; and it is plain that she was regarded by all who knew her as being, at that date, a woman grown. She was a married woman and a mother when her testimony was taken.

By consent this cause was referred to a referee, who found all the issues for plaintiffs; and a decree was entered setting aside the partition and the sale and conveyance thereunder, and rendering judgment in favor of plaintiffs for $1,240 rents and profits, and for restitution of the premises, and for costs.

Exceptions were duly filed by Reiners to the report of the referee, and were overruled; and defendant, in due time, moved to set aside the decree and for a rehearing, which was overruled; and, the judgment of the Circuit Court hav-

ing been affirmed in general term, the case is brought here by appeal.

1. On this state of facts we are wholly unable to see how it was possible for the Circuit Court to do otherwise than enter a decree for plaintiffs according to the prayer of their petition. The referee expressly finds that Josephine was an entire stranger to the proceedings in partition; and, although the testimony on this point was conflicting, and she is contradicted on this point by the attorney who conducted the suit, yet he seems to have no distinct recollection of what passed; cannot remember whether she was in bed or sitting up when he took, as he says, her affidavit; and she is corroborated by a disinterested witness, the bar-keeper of her step-father, who swears that she did not sign the affidavit, or know of it; that her mother signed it in his presence, without her knowledge, and that the attorney was not present in the room where it was done. Reiners admits that he knew, as soon as he had earned the house and lot, that Schmitz had no title to the property; and that it was worth $2,800 at the time his testimony was given, property having somewhat depreciated in value. He knew that both the children were minors at the time that Schmitz proposed to make title through a partition suit, and that they were the step-children of Schmitz, living with him, and under his control; and, though he says that Josephine heard the conversation between Schmitz and himself about making title to him, he admits she was fifteen feet off at the time it took place. It may be that Reiners did not advert to the fact that a fraud was being perpetrated against defenseless children, by Schmitz, who, as the husband of their mother, having received them into his house, was their natural protector; but, if this be so, his folly cannot be a reason for a court of equity to abdicate one of its most important functions. A gross fraud has been perpetrated, and Reiners knew all the essential facts. If this sale could be sustained, no minor would be safe from the rapacity of dishonest relations.

We are told that no wrong was done to Peter Lang, because he was served with summons, signed the petition for an appointment of a guardian, his step-father became his guardian and gave bond, and can be made to account for his share of the proceeds of the sale.

But the property was sold for $1,480 to his step-father. It is said by defendant Reiners to be worth $2,800. It was taken by him as payment for $3,500. Schmitz paid, and actually, through the intervention of his attorneys, employed, counsel on both sides. When the interests of minors are concerned, and their property is sold under proceedings set on foot, with a view of becoming the purchaser himself, by one who stands *in .loco parentis*, the property must be shown to have brought something more than half its value, when the step-father who purchases is guardian *ad litem*, and retains counsel for the minor as well as counsel for the other side. It can hardly be necessary to dwell further upon this view of the case.

2. The decree in partition, the advertisement, and the deed of the sheriff contained an erroneous description of the property. The property advertised for sale under the decree was lot 3 in block 4; that described in the petition was lot 3 in block 3. There was, therefore, no advertisement of the property to be sold, as required by law. An attempt was made to cure this irregularity by an application to the court, after the sheriff's report was filed, to amend the decree, order of sale, and deed of the sheriff, so as to make the description of the property correspond with the description in the petition. We are of opinion that the defect was of a nature which could not be cured without a new advertisement, and that the deed of the sheriff should have been set aside on this ground alone.

3. In his answer, Reiners made allegation to the effect that this suit was brought in complicity between plaintiffs and defendant Schmitz to cheat and defraud him. This allegation was stricken out, on motion of plaintiffs, and we

cannot see that appellant was prejudiced by this action of the court. Such an allegation could not be true unless the material allegations of plaintiffs' bill were false; and, if these allegations were not sustained by sufficient proof, it must be wholly immaterial whether plaintiffs commenced these proceedings of their own motion or in complicity with Schmitz. Perhaps Schmitz did intend all the while, first, to get Reiners to take this lot in part payment of the house he was building, and then to set the children up to commence proceedings to annul the sale; but that would not affect the rights of the children unless they were parties to the plot; and. Josephine is alleged and found to have been a total stranger to the partition suit, and must necessarily have been shown to be so unless she was to be bound by it; and Peter was a defendant, and purely passive; and Reiners knew all the while that Schmitz had no title, and he was himself a party to the arrangement by which the suit was brought. The matter stricken out could have had no influence in the decision of the suit, either as to the subject-matter of the. controversy, the particular relief to be given, or as to costs. This was not assigned for error in defendant's motion for a new trial; and, if there were anything in the objection, it is made too late.

We are asked by respondent, not only to affirm the judgment of the Circuit Court, but to give a further judgment for rents accrued since June 1, 1875. This we have no power to do. We do not see how plaintiffs can recover in this action for rents accrued since the rendition of the judgment; but they are not, therefore, deprived of a sufficient remedy for the recovery of their rents.

The judgment of the Circuit Court is affirmed. All the judges concur.